IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

FILED
JUL 29 2010
Clerk, U. S. District Court
Eastern District of Tennessee
At Knoxville

| | |
|---|---|
| DEANNE CRICKS SMITH AND MARGALINA PEZZULLO, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 3:10-CV-327 ) JURY DEMAND |
| EOD TECHNOLOGY, INC., | ) JUDGE: Varlan/Guyton ) |
| Defendant. | ) |

## COMPLAINT

COME NOW the Plaintiffs, DEANNE CRICKS SMITH and MARGALINA PEZZULLO, and hereby sues the Defendant, EOD TECHNOLOGY, INC., and for cause of action would show unto this Honorable Court as follows, to-wit:

1. The Plaintiff, Deanne Cricks Smith, is a citizen and resident of Missouri City, Texas.

2. The Plaintiff, Margalina Pezzullo, is a citizen and resident of Grandview, Washington.

3. The Defendant, EOD Technology, Inc., is a corporation authorized to do business in Tennessee, with its principal place of business located at 2229 Old Highway 95, Lenior City, Loudon County, Tennessee, 37771, and may be served with process through its registered agent, Erik S. Quist, at 2229 Old Highway 95, Lenior City, Tennessee 37771.

4. Jurisdiction is founded upon Federal Question, 28 U.S.C. § 1331, 28 U.S.C. § 1343, 42 U.S.C. § 2000e-5(F). Venue is proper under the code provisions cited herein and 28 U.S.C. § 1391(b) and (c).

5. Venue is proper in this Court.

6. The Defendant is an employer subject to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et. seq.*, the Civil Rights Act of 1991, 42 U.S.C. § 1981(a).

7. The Defendant is an employer subject to the provisions of the Equal Pay Act, 29 U.S.C. § 206(d).

8. The Defendant is an employer engaging in an industry affecting commerce, and it employs more than twenty (20) employees.

9. The Defendant provides various services to the United States of America, its Allies and private industry. Defendant performs work in the United States, Iraq, Afghanistan and other foreign countries.

10. Both Plaintiffs are female.

11. Plaintiff, Deanne Cricks Smith, was originally hired by the Defendant as a Property Specialist on May 10, 2008, at which time she entered into a contract with Defendant. (Attached as Exhibit 1 is a copy of the contract).

12. At all times stated herein, Deanne Cricks Smith was qualified for the position of Property Specialist.

13. Plaintiff, Margalina Pezzullo was originally hired by the Defendant as a TOC Officer on June 19, 2008, at which time she entered into a contract with Defendant. (Attached as Exhibit 2 is a copy of the contract).

14. At all times stated herein, Margalina Pezzullo was qualified for the position of TOC Officer.

15. During her employment with the Defendant, the Plaintiff, Deanne Cricks Smith, ably

2

performed her duties and maintained an exemplary employment record.

16. During her employment with the Defendant, the Plaintiff, Margalina Pezzullo, ably performed her duties and maintained an exemplary employment record.

17. Margalina Pezzullo was paid less in the position of TOC Officer than similarly situated male employees with this job title.

19. Plaintiff, Margalina Pezzullo was terminated on September 6, 2008, for a trumped up reason after she complained of sexual harassment and sex discrimination.

20. Plaintiff, Deanne Cricks Smith's employment was terminated on November 23, 2008, when she was terminated and/or was constructively discharged.

21. During Plaintiffs' employment, Plaintiffs were stationed in Iraq.

22. During Plaintiff, Deanne Cricks Smith's employment, she reported to David Phifer.

23. During Plaintiff, Margalina Pezzullo's employment, she reported to Chris Myers, Security Project Manager.

24. At all times stated herein, David Phifer and Chris Myers were agents and employees of the Defendant.

25. At all times stated herein, David Phifer had the authority to discipline and terminate the Plaintiff, Deanne Cricks Smith.

26. At all times stated herein, Chris Myers had the authority to discipline and terminate the Plaintiff, Margalina Pezzullo.

29. During Plaintiff, Deanne Cricks Smith's employment, she was given the job title of Property Book Manager.

30. At all times stated herein, Deanne Cricks Smith was qualified for the position of

3

Property Books Manager.

31. During Plaintiff, Margalina Pezzullo's employment, she was given the job title of TOC Officer.

32. At all times stated herein, Margalina Pezzullo was qualified for the position of TOC Officer.

33. When Plaintiff, Deanne Cricks Smith was given the title Property Book Manager, she was not given a raise.

34. After Plaintiff, Deanne Cricks Smith was given the title of Property Book Manager, her pay should have increased to $180,000.00 per year.

35. After Plaintiff, Deanne Cricks Smith became a Property Book Manager, she was paid less in this position than similarly situated male employees with this job title.

36. After Plaintiff, Deanne Cricks Smith got the title of Property Book Manager, she complained to her supervisors that she did not receive a raise because of her sex (*i.e.*, female).

37. In September, 2008, Plaintiff, Deanne Cricks Smith applied for a transfer to Afghanistan.

38. Thereafter, Plaintiff, Deanne Cricks Smith was advised that her transfer had been approved.

39. Thereafter, Plaintiff was told that her transfer to Afghanistan had been cancelled because she was female.

40. The Plaintiff, Margalina Pezzullo, on her second day in Iraq, was asked to go to the pool with another TOC officer, Patel, and the Site Security Officer, Doug Beleise. Once it started getting late, Plaintiff Pezzullo asked TOC Officer, Patel, to take her home. Doug Beleise, the Site

4

Security Officer, then stated that he would take Plaintiff home if she would first go back to his room with him. Plaintiff told Mr. Beleise she was married and she did not think accompanying him to his room was a good idea, and he appeared angry at her refusal.

41. Two days later, on July 17, 2008, Plaintiff received an email that stated, "2 guys in 4 days is quite the record even for a yank like you. I hope your kit is packed as when Paul Lane sorts it out you will be headed back across the pond. Couldn't even go elsewhere had to shit in your own yard huh?" This accusation was very offensive and was false.

42. Plaintiff, Margalina Pezzullo, did not know who else had received this email, and she thought she might lose her job since Paul Lane was the Deputy Country Manager, and she was very upset about this email. Her supervisor, Chris Myers, was on leave so she discussed the email with Paul Hayward, the Acting Security Manager. After discussing the email with Mr. Hayward, Plaintiff got on the internet and ran a search on the email address to see if she could discover who sent the email, and she discovered it had been sent by Doug Beleise.

43. Plaintiff, Margalina Pezzullo, thereafter, informed Paul Hayward, Acting Security Project Manager, of her discovery and informed him of what occurred with Doug Beleise, about him asking her to go to his room and getting mad when she refused, and that this could be construed as sexual harassment.

44. Mr. Hayward asked Plaintiff, Margalina Pezzullo, to keep quiet about it and he stated, maybe Mr. Beleise would send another email and they could catch him doing so. It was Plaintiff Pezzullo's belief that Mr. Hayward did not want to deal with her complaint of sexual harassment.

45. Thereafter, an incident occurred involving TOC Supervisor, Paul Scott. Plaintiff, Margalina Pezzullo was working in her office, and Mr. Scott came into her office and asked her to

5

do something on the computer for him. Plaintiff Pezzullo was typing as he was talking and she finished what he asked her to do so she exited out of the program and he began yelling: "No, no, no! You have no clue what you are doing! I don't need you here. Shut up!" Mr. Scott threatened to smack Plaintiff Pezzullo. Mr. Scott had problems working with females. Another female, Dianne Goodley, had experienced similar problems with Mr. Scott. Plaintiff Pezzullo stood up and told Mr. Scott he had no right to talk to her in this manner, and she thereafter reported the incident to Paul Hayward, Acting Security Project Manager. Mr. Hayward asked Plaintiff Pezzullo to wait until Chris Myers, Security Project Manager, got back from leave and to talk to him about what happened.

46. Later in Plaintiff Pezzullo's employment, she was asked to go on a mission with a group of officers, and Doug Beleise was one of them. The first day into the mission, Doug Beleise began screaming at Plaintiff Pezzullo and became confrontational, and at that time, Plaintiff Pezzullo told him that she knew he was the sender of the email she had received.

47. Plaintiff Pezzullo told him she had complained he had sexually harassed her and the company was watching him.

48. When Plaintiff Pezzullo returned back to the company office, she again went to Paul Hayward, Acting Security Project Manager, and informed him of the confrontation with Doug Beleise, and he said he would inform Paul Lane, Deputy Country Manager.

49. Afterwards, Plaintiff Pezzullo was placed on night shift.

50. During approximately Plaintiff Pezzullo's third or fourth week of employment, a new TOC officer, Jason ("TAZ") (last name unknown), a male, was hired. Plaintiff Pezzullo learned that he was being paid $150,000.00 a year, whereas she was being paid $120,000.00 a year.

51. Plaintiff Margalina Pezzullo was as qualified or more qualified than Jason ("TAZ")

6

(last name unknown).

52. During her sixth week of employment, Chris Myers, Security Project Manager, returned from leave. On his first day back, Mr. Myers asked Plaintiff Pezzullo to come into his office so they could talk.

53. Mr. Myers asked Plaintiff Pezzullo how she liked working in the TOC, and Plaintiff Pezzullo informed him that she was having some issues concerning sexual harassment and discrimination.

54. Plaintiff Pezzullo told him about the situations with Doug Beleise and the situation with Paul Scott, and about the pay discrepancy between her pay and Jason's (last name unknown) pay.

55. Chris Myers told Plaintiff Pezzullo that he was the one that wrote up Plaintiff Pezzullo's contract at $120,000.00, and the home office for EODT had written up Jason's contract. He stated that there was nothing he could do.

56. Plaintiff Pezzullo informed him she had signed the original contract at $120,000.00 not knowing that she was going to make $120,000.00 for doing a job that the men were getting paid $150,000.00 for, and that this was discriminatory.

57. Mr. Myers, thereafter, asked Plaintiff Pezzullo if she would like to be placed somewhere else. Plaintiff Pezzullo told him that she would like to go on a PSD team or Convoy team, but he informed her the company would not let her do so because she was female. Plaintiff Pezzullo told him she thought that policy was discriminatory.

58. Later, Jim Hoven, Country Manager, told Plaintiff Pezzullo he heard she was not happy and asked her if she would like to go somewhere else. Plaintiff Pezzullo told him yes, she

would like to go on a PSD team or a Convoy team.

59. Jim Hoven, Country Manager, knew Plaintiff Pezzullo had previous experience in this and she was qualified to do this, but he also informed her that was not going to happen because she was female, but he could put her on a Forward Operating Base ("FOB") to do administrative work.

60. Plaintiff Pezzullo wanted to keep her job, so she agreed, as long as her pay did not go down.

61. About a week later, Plaintiff Pezzullo was told that she would be going to a FOB to work and that she would be placed in a management position because of her experience, and due to the fact she had a security clearance.

62. Approximately one week after Plaintiff Pezzullo was told she would be moved to a FOB, Phillip Marlowe, an employee of the Defendant, approached her and stated Doug Beleise wanted to talk to her so he "could clear some things up."

63. Plaintiff Pezzullo had previously confided in Phillip Marlowe about the sexual harassment/discrimination issues. Plaintiff Pezzullo did not want to speak with Doug Beleise alone, so she said the only way that would occur would be if Jim Hoven and Chris Myers were present.

64. Thereafter, Plaintiff Pezzullo went to Jim Hoven and told him about Mr. Beleise's request, and that she thought this was additional harassment. Jim Hoven informed Plaintiff Pezzullo that if she wanted to stay with the company, it would be best if "I laid low and left the situation alone."

65. Plaintiff Pezzullo told Mr. Hoven that she was sick of leaving the situation alone, because Doug Beleise had been moved to a different base, but he was still bothering her.

66. Plaintiff Pezzullo informed Hoven that she had let the situation go on as far as it could and that it now needed to be handled.

67. A few days later, on September 6, 2008, Plaintiff Margalina Pezzullo was fired.

68. Paul Golle told Plaintiff Margalina Pezzullo, she was being fired and that she needed to talk to Chris Myers, Security Project Manager, about it.

69. Plaintiff Margalina Pezzullo, thereafter, talked to Chris Myers and he informed her that the company was being "downsized."

70. Plaintiff Margalina Pezzullo asked if Jason (last name unknown) was also being let go, and he said, "No, he had been offered a different job that I could not do because they would not let women work on a QRF team."

71. Plaintiff, Margalina Pezzullo had more seniority than Jason, and she was fully qualified to work on a QRF team.

72. The real reason for Plaintiff, Margalina Pezzullo's termination, was due to her sex and/or in retaliation for complaining of sexual harassment and discrimination.

73. Plaintiff, Deanne Cricks Smith complained of sex discrimination following the cancellation of her transfer, and thereafter, Plaintiff Crick's superiors got very angry at her, and Plaintiff Cricks was subjected to hostile behavior, including calling her names, making her re-do the same jobs over and over again, treating her in a very cold, angry and condescending manner, manipulating her work hours in an unreasonable and harassing manner, and subjected her to other forms of retaliatory behavior, etc., in an effort to punish her and to convince her to quit.

74. Plaintiff, Deanne Cricks Smith ultimately felt she had no choice but to quit, and effective November 23, 2008, Plaintiff Smith was constructively discharged.

75. After Plaintiff, Deanne Cricks Smith's constructive discharge, a male employee, Darren Austin, who had no property book experience, was given the job Plaintiff Cricks had been offered in Afghanistan.

76. Also, following Deanne Cricks Smith's constructive discharge, her job duties in Iraq were given to a male.

77. The real reason for Plaintiff, Deanne Cricks Smith's discharge was because she made complaints of sex discrimination and/or due to her sex.

78. As a result of the discrimination and retaliatory actions as set forth herein, the Plaintiff, Margalina Pezzullo filed a timely Charge of Discrimination and Retaliation with the Equal Employment Opportunity Commission ("EEOC") (A copy of the Charge is attached hereto as Exhibit 3).

79. As a result of the discrimination and retaliatory actions as set forth herein, the Plaintiff Deanne Cricks Smith filed a timely Charge of Discrimination and Retaliation with the Equal Employment Opportunity Commission ("EEOC") (A copy of the Charge is attached hereto as Exhibit 4).

80. Margalina Pezzullo's EEOC Charge was timely filed.

81. Deanne Cricks Smith's EEOC Charge was timely filed

82. Plaintiff, Margalina Pezzullo received a Right to Sue Notice from the EEOC dated May 19, 2010. (A true and exact copy of Right to Sue Notice is attached hereto as Exhibit 5).

83. Plaintiff, Deanne Cricks Smith received a Right to Sue Notice from the EEOC dated April 29, 2010. (A true and exact copy of Right to Sue Notice is attached hereto as Exhibit 6).

84. Plaintiffs have satisfied all of the procedural and administrative requirements of § 706

10

Case 3:10-cv-00327-TAV-HBG   Document 1   Filed 07/29/10   Page 10 of 12   PageID #: 10

of Title VII.

85. This suit is timely filed.

86. Both Plaintiffs were paid less than similarly situated males.

87. The Defendant, by and through its agents and employees, discriminated against Plaintiffs due to their sex and/or retaliated against the Plaintiffs for engaging in protected activity.

88. The Defendant is responsible for the retaliatory and/or discriminatory actions of its agents and employees under the doctrine of <u>respondent superior</u> and under agency principles.

89. Plaintiffs maintain that Defendant's conduct constitutes discrimination against Plaintiffs affecting a term, condition, or privilege of employment, because of their sex and constitutes unlawful retaliation for engaging in oppositional activities in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), *et seq.*, and the Civil Rights Act of 1991, 42 U.S.C. §1981(a).

90. Plaintiffs allege that as a result of the aforesaid, the Defendant has violated the provisions of the Equal Pay Act, 29 U.S.C. § 206(d).

91. As a result of Defendant's conduct, the Plaintiffs have lost tangible job benefits, including a loss of income and benefits, both past and future, and have suffered and will continue to suffer irreparable injury, emotional distress, humiliation and embarrassment, and other non-pecuniary losses as a direct result of Defendant's illegal actions.

92. Defendant acted intentionally or in reckless disregard of Plaintiffs' federally protected rights, such as to justify the imposition of substantial punitive damages.

93. Defendant's conduct is such as to justify the imposition of liquidated damages.

**WHEREFORE** the Plaintiffs pray for the following relief:

1. Compensatory damages, including front pay or, in the alternative, reinstatement;

2. Liquidated and Punitive damages;

3. Prejudgment interest;

4. Reasonable attorney's fees and expert witness fees;

5. Cost of this action;

6. A jury to try this cause; and

7. A mandatory injunction ordering the Defendant to refrain from unlawful discrimination/retaliation, and ordering Defendant to undertake appropriate actions to prevent unlawful discrimination/retaliation in the workplace.

RESPECTFULLY SUBMITTED this the 28 day of July, 2010.

BURKHALTER, RAYSON & ASSOCIATES, P.C.

_____
David A. Burkhalter, II, BPR #004771
Ronald A. Rayson, BPR #013393
Attorneys for Plaintiff
P. O. Box 2777
Knoxville, Tennessee 37901
(865) 524-4974